STATE v. SUMMERS *ET AL.*

1. The charge in this case was not a charge " in respect to matters of fact," but only such a statement of the testimony as the constitution permits. Article IV., § 26.
2. There was at the trial sufficient *prima facie* evidence of venue to be submitted to the jury.

Before ALDRICH, J., Orangeburg, May, 1882.

The opinion fully states the case.

*Messrs. Lathrop & Webster,* for appellant.

*Mr. Solicitor Jervey,* contra.

March 20th, 1883.   The opinion of the court was delivered by

MR. JUSTICE MCGOWAN.   This was an indictment for riot, assault with intent to kill, and aggravated assault and battery. Each of the three counts charged that the offense was committed on April 7th, 1882, in the county of Orangeburg.

Henry Galluchet, the prosecutor, testified that on the night stated he and two others were sleeping in a new school-house near where he had been working that day.   There was a large camp of workers at Holcomb's mill, about half a mile off; during the night he was aroused by the talking of Henry Glover and Cyrus Jones, who wanted him to go with them to the mill. He refused, and they carried him by force three or four hundred yards to a place near the swamp, where there was a great crowd of people, who tied him to a tree, and, coming up in squads, whipped him for an hour with clubs and switches, marking him severely from his shoulders to his feet.   During the time, while they were tying him, he heard some one in the crowd say "Kill him."   He said he recognized all of the defendants as being among those who whipped him.

Ned Robinson, one of the men who were sleeping with Galluchet in the school-house, testified that when he was awakened from sleep Galluchet was going out of the door "grumbling" with some persons; afterwards heard "hallooing down to the branch;" went down where they were; heard "a parcel of men talking easy,"; and when they came towards him he ran off.

Dr. W. S. Barton testified that he saw Galluchet the Sunday following.   Did not examine his condition further than his face, which was badly banged up and mutilated; his face was badly beaten up.

A. M. Sally, sheriff, testified that he was the sheriff of Orange-

burg county; knows what is called Holcomb's mill, near the
Colleton line; did not see the school-house, but the place where
it was, in a clump of pines, was pointed out to him by his deputy,
who had been to it; has executed warrants in the neighborhood;
treated as a part of his bailiwick; does not know, but is satisfied
where the Colleton line runs; so satisfied that he executed the
warrants; could only get information upon the subject by inquir-
ing; received his information from mill hands, and also from
Mr. Westbury in particular; was so satisfied that he executed
the warrants without having them endorsed.

Adam Wannamaker testified, that he used to live in the section
near Holcomb's mill; knew of two school-houses down there,
about two miles apart; one built some seven or eight years ago,
and the other last July; knew where the county line runs; be-
tween Dick Summers' and Holcomb's mill, about half a mile
from the mill; runs from east to south; it is blazed on the trees
something like the line surveyors make; leaves the old school-
house on the Colleton side; "this school-house" (the new one)
"is in an old field with pine woods round it, right north of the
mill and about half a mile from it; if you were at Holcomb's
mill and looking towards the sunrise, you would look across a
little bit of the Orangeburg road" (line).

The defense was an *alibi*, and, to sustain it, two witnesses, Isaac
Berry and Shedrick Carn, testified that on the night in question
they were in the same camp with defendants here on trial, about
a mile from the mill in a direction of right angles from the
school-house. Both witnesses testified that they were awake that
night until after the moon had risen, and were positive that
neither of the defendants left the camp before that time. In
reply Mr. John S. Rowe testified that he was acquainted with
Isaac Berry, witness for the defense; that his reputation was bad
and that he would not believe him on his oath from that reputa-
tion.

No requests to charge were made. The judge charged the
jury, they returned a verdict of "guilty," and the defendants
appeal to this court upon the following grounds:

1. "Because the judge charged the jury that there is no proof
whatever that there was any private enmity existing between the

prosecutor and the defendants, not a particle of proof on that score. He comes here and gives you a full and detailed account of what happened on that occasion.

2. " Because the court further charged the jury that he (the prosecutor) was beaten, is established beyond a doubt.

3. " Because the court further charged the jury that he (the prosecutor) says that he identified those (the defendants), and he had an opportunity of identifying them, not only from their countenances, but from their voices.

4. " Because the court charged the jury that ' the defense set up is an *alibi.* It is a favorite defense—I think it is called, in the books, ' the rogues' defense.' It is always a complete defense if established, but it is a very dangerous one, because when a person is accused of committing a crime and he sets up a false defense which cannot be established, and the jury do not believe it, then it raises a presumption of guilt from the fact that he sets up that which is not true.'

5. " Because the court further charged the jury : ' Now you are to take all these facts into consideration, and if, as fair, honorable and just-minded men, you come to the conclusion that there is a reasonable doubt upon your minds that this man, Galluchet, has been mistaken in his identification of the parties, you must give them the benefit of that doubt. But if you have no such doubt, you will weigh the testimony, as honorable men, and say what conclusion you have arrived at.'

6. " Because the court further charged the jury : ' So far as the county is concerned, you will take into consideration the evidence which has been introduced. The sheriff says it is his bailiwick, and that he served papers there. Mr. Wannamaker says that the school-house is in the county, and he says that the line of the county was marked and blazed out beyond where the school-house is. If you have no doubt on the subject, why you need not let that consideration weigh with you a single iota.'

7. " Because the court further charged the jury : ' The only question for you to decide is, Has Galluchet told the truth ? If he has, he has brought this offense home to these defendants. If he has not, or has been entirely mistaken and your minds hesitate, you will give the defendants the benefit of the doubt.'

8. " Because the jury having rendered a verdict of guilty as to the defendants, Mordecai Summers, Pat Summers, Sr., Ben Glover, Asbury Davis, Asbury Baxter and Clay Johnson, the court then sentenced the said defendants to be confined in the State penitentiary, at hard labor, for the period of five years."

The eighth exception, as to the punishment imposed, was not pressed. The case involved only questions of fact, on which the jury have passed, and it is, therefore, taken from the consideration of this court, unless the judge committed error of law in submitting it to the jury.

Exceptions one, two, three, four, five and seven complain that the judge, in regard to the matters stated in them respectively, transcended his authority under section 26, article IV., of the constitution, which declares that " Judges shall not charge juries in respect to matters of fact, but may state the testimony and declare the law." There is no more difficult duty imposed upon this court than that of deciding questions which arise under this clause of the constitution. This difficulty arises from the vague, undefined nature of the subject. What is embraced in the right to " state the testimony " ? Who can fix with certainty the exact limit, and apply it satisfactorily to the infinite combination of circumstances which arise in the administration of justice? If there is no testimony, the judge undoubtedly has the right to say so ; and it is as clearly his right and duty to classify and arrange the evidence under proper heads, that the jury may be the better enabled to apply the law to the facts.

In the case of the State v. White, 15 S. C. 392, this court stated the rule, as follows : " While the judge is not expected to confine himself to a mere statement or repetition of the testimony as it was delivered, but may place it before the jury in the order in which it relates to the propositions which it is adduced to support or contradict, by pointing out the questions of fact which arise, and calling the attention of the jury to the evidence applicable to such questions, yet he should carefully avoid expressing any opinion which he may have formed from the facts, leaving it for the jury to draw their own conclusions, unbiased by any impression which the testimony may have made upon the mind of the judge."

Taking this as the test, we cannot say that the particular expressions complained of in the judge's charge, when considered in connection with the whole, did more than place the evidence before the jury in the order in which it related to the issues made. The point in the case, was whether the defendants were the persons who did the whipping; and we do not see that the judge indicated any opinion on that subject, when he said, "That the prosecutor comes here and. gives you a full and detailed account of what happened on that occasion;" or when he said, "That the prosecutor was beaten is established beyond a reasonable doubt;" or, "Has the prosecutor sufficiently identified the accused to enable you to come to a conclusion that they are the same who perpetrated the outrage on that occasion? If you are not satisfied that he has identified them, you must give them the benefit of any reasonable doubt that arises in your minds. * * * He says that he identified them, and he had an opportunity to identify them, not only from their countenances but from their voices. * * * The only question for you to decide is, Has Galluchet told the truth? If he has, he has brought this offense home to these defendants. If he has not, or has been entirely mistaken, and your minds hesitate, you will give the defendants the benefit of the doubt. * * * Now you are to take all these facts into consideration, and if, as fair, honorable and just-minded men, you come to the conclusion that there is reasonable doubt upon your minds that this man, Galluchet, has been mistaken in his identification of the parties, you must give them the benefit of that doubt. But, if you have no such doubt, you will weigh the testimony as honorable men, and say what conclusion you have arrived at."

Nor do we think that the observations of the judge, as to the general character of the defense of *alibi*, stated in the fourth exception, was such an expression of opinion upon the facts of this particular case as should set aside the verdict. Particularly, as the judge added: " If these men were not present, of course they could not have committed the offense. They may account for themselves in the way it has been described to you by the solicitor. So far as the question of evidence is concerned, you

are to decide that without the assistance of the court, and you are to decide it upon the comparison of the testimony."

Exception six charges that the judge erred in his statement of the evidence in relation to the venue, saying that " so far as the county is concerned, you will take into consideration the evidence which has been introduced. The sheriff says it is his bailiwick and that he served papers there. Mr. Wannamaker says that the school-house is in the county ; and says that the line of the county was marked and blazed out beyond where the school-house is. If you have no doubt on that subject, why you need not let that consideration weigh with you a single iota."

The indictment charged that the offense was committed in the county of Orangeburg, and it was necessary that the State should prove it. In order to do so, the sheriff of the county, A. M. Sally, and Adam Wannamaker were sworn as witnesses. No evidence was offered on the other side. Neither of them stated in express terms, as reported in the case, that the school-house where it was alleged the whipping had taken place, was in the county of Orangeburg, but they both said substantially that. What they did say could not be understood to mean anything else. Sally said that he knew where the school-house stood in a clump of pines ; that he had served writs in that neighborhood ; that he had made inquiries and received that information, and that he was so satisfied that he executed the writs without having them endorsed. This alone was *prima facie* evidence of the fact, sufficient until the contrary was shown, and properly for the consideration of the jury.

The judgment of this court is that the judgment of the Circuit Court be affirmed.